IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

GREG HINES, MICHAEL HEADRICK, §
§
    *Plaintiffs* § 5-15-CV-00911-FB-ESC
§
vs. §
§
KEY ENERGY SERVICES, LLC, §
§
    *Defendant* §
§
§

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

    This Report and Recommendation concerns the Motion for Partial Summary Judgment [#17] filed by Plaintiffs Greg Hines and Michael Headrick (collectively, "Plaintiffs"). All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#28]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court federal question jurisdiction over this case filed pursuant to the Fair Labor Standards Act ("FLSA"). *See* 28 U.S.C. §1331.

    After considering Plaintiffs' Motion [#17], the Response filed by Defendant Key Energy Services, LLC ("Key Energy") [#27][1], Plaintiffs' Reply [#29], and the case file, the undersigned recommends that the District Court **GRANT IN PART** Plaintiffs' Motion for Partial Summary

---

[1] Key Energy filed its Response twice on the docket. (*See* [#26, #27].) Both responses appear to be identical except that Key Energy has attached an additional exhibit to its second filing. Accordingly, the Court will consider Docket Entry No. 27 as Key Energy's Response and disregard Docket Entry No. 26.

1

Judgment [#17]. Plaintiffs seek summary judgment that the exemptions claimed by Key Energy—the executive, administrative, combination, highly compensated employee ("HCE"), and Motor Carrier Act ("MCA")—are inapplicable to them as a matter of law. Key Energy has abandoned its argument regarding the applicability of the MCA exemption.[2] In addition, Key Energy's response does not adequately contest the inapplicability of the administrative or combination exemptions, and it has therefore waived those defenses. Thus, Plaintiffs are entitled to summary judgment that the MCA, combination, and administrative exemptions are inapplicable to them. Finally, the evidentiary record establishes that Plaintiff Hines is not exempt under the executive exemption as a matter of law. Material issues of fact preclude granting Plaintiffs' motion for summary judgment with regard to the executive exemption as to Plaintiff Headrick and with regard to the HCE exemption as to both Plaintiffs.

## I.     **Background**

This is a wage and hour case by oil-services workers against their former employer, Key Energy, a company that provides on-site well production services in various states including in Texas, Oklahoma, and New Mexico. (*See* Hines Decl. [#17-1] ¶¶ 2-3; Headrick Decl. [#17-2] ¶¶ 2-3.) Plaintiffs Hines and Headrick worked for Key Energy. Hines was employed as a Service Supervisor in Key Energy's pressure-pumping division in Marshall, Texas from approximately April 2009 until August of 2013. (*See* Hines Decl. ¶ 2, 4; Russell Decl. [#26-1] ¶ 2; Exs. C-1 & C-2 to Resp.) Key Energy terminated Hines for allegedly violating the Company's Drug-Free Workplace policy. (*See* Ex. C-2 to Resp.) Headrick was employed as a Service Supervisor in Key Energy's coil-tubing services division in Oklahoma from 2014 through early 2015.[3] (*See*

---

[2] (*See* Response at 1 n. 1.).
[3] The parties dispute the dates Key Energy employed Headrick as a Service Supervisor. Headrick contends that he was employed as a Service Supervisor from May 2014 until January

Headrick Decl. ¶¶ 2, 4; Davis Decl. ¶ 2; Ex. C-3 to Resp.) Prior to that, Headrick worked as an Equipment Operator for Key Energy beginning in or around May 2011. (*See* Davis Decl. ¶ 2; Ex. C-3 to Resp.) In January or February 2015, Key Energy terminated Headrick for allegedly using his company credit card to purchase personal items in violation of company policy. (*See* Davis Decl. ¶ 2; Ex. C-4 to Resp.)

There is no dispute about how Plaintiffs were paid: Key Energy paid Plaintiffs salary plus bonuses for their work as Service Supervisors. (*See* Hines Decl. ¶ 5; Headrick Decl. ¶ 5; Russell Decl. ¶ 3; Davis Decl. ¶ 4.) Plaintiffs' duties, on the other hand, are vigorously contested. Plaintiffs claim that they were required to travel to customers' jobsites to perform well-pressure-pumping work, which they argue consists almost entirely of manual labor. (*See* Hines Decl. ¶¶ 6-8, 11-21; Headrick Decl. ¶¶ 6-8, 11-21.) Key Energy, on the other hand, argues that Plaintiffs were primarily responsible for training and supervising crew members in the performance of such duties. (*See* Russell Decl. ¶¶ 4-7; Davis Decl. ¶¶ 5-8.)

Plaintiffs initiated this litigation on October 20, 2015, alleging that Key Energy improperly classified them as exempt employees and failed to pay them overtime wages in violation of the FLSA [#1]. On October 17, 2016, Plaintiffs filed this Motion for Partial Summary Judgment, arguing that Key Energy cannot raise a genuine issue of material fact from which a reasonable jury could conclude that Plaintiffs were exempt employees under the FLSA.[4] Key Energy opposes summary judgment on the grounds that both Plaintiffs allegedly qualified

---

2015. (*See* Headrick Decl. ¶ 2). Key Energy, on the other hand, asserts that Headrick was employed as a Service Supervisor for a much shorter time period— from November 30, 2014 through approximately February 2, 2015. (*See* Davis Decl. ¶ 2.)

[4] The case was subsequently stayed following Key Energy's filing of a Suggestion of Bankruptcy [#19]. A few months later, the District Court lifted the stay following Key Energy's notice of termination of the automatic stay [#21].

for the executive and highly compensated employee exemptions.[5]

## II.     Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* FED. R. CIV. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating

---

[5] Key Energy's Response also includes allegations that Plaintiffs' claims are barred by the statute of limitations. (*See* Response at 8-10). However, Key Energy never filed a motion for summary judgment on this (or any other) issue. An argument in a response does not constitute a cross motion for summary judgment. *See, e.g., Burgess v. Daniels,* No. 13-CV-02191-PAB-CBS, 2014 WL 4698773, at *12 n. 5 (D. Colo. Sept. 22, 2014) (noting that "it is procedurally improper to request affirmative relief in a response brief"); *Summit Towers Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60601-CIV, 2012 WL 12840822, at *4 (S.D. Fla. Apr. 30, 2012) (noting that "[m]ost of the issues raised by [plaintiff] would be appropriate if it had filed its own motion for summary judgment, but are procedurally improper when included in a response brief to [defendant's] motion for summary judgment"). Even if the Court were to construe Key Energy's Response as a cross-motion for summary judgment, the motion would be untimely. Pursuant to the District Court's Scheduling Order [#8] the deadline to file dispositive motions was October 17, 2016. Key Energy's Response was not filed until four months later, on February 17, 2017. Accordingly, Key Energy's statute of limitations arguments are not properly before the Court.

that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

This case involves a somewhat uncommon posture. First, it is Plaintiffs, not the Defendant, who are moving for summary judgment. Second, Plaintiffs are moving for summary judgment on Defendant's affirmative defenses. Because Plaintiffs do not bear the burden of proof at trial, Plaintiffs are entitled to summary judgment if they can point to an absence of evidence to support an essential element on a particular affirmative defense. *See Celotex*, 477 U.S. at 322-23; *Fed. Debt Mgmt., Inc. v. Herbst Res., Inc.*, 15 F.3d 179 (5th Cir. 1994). Plaintiffs are also entitled to summary judgment if they produce sufficient evidence negating an essential element of Defendant's affirmative defense. *Celotex*, 477 U.S. at 323.

### III.     Analysis

Plaintiffs contend they are entitled to summary judgment on the affirmative defenses pled by Key Energy—in particular, the five overtime exemptions asserted by Key Energy in its answer. The FLSA "requires an employer to pay overtime compensation to any employee

working more than forty hours in a workweek." *Allen v. Coil Tubing Servs, L.L.C*., 755 F.3d 279, 282 (5th Cir. 2014) (citing 29 U.S.C. § 207(a)(1)). This requirement, however, does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "Exemptions under the FLSA are construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption." *Songer v. Dillon Res., Inc*., 618 F.3d 467, 471 (5th Cir. 2010).

To prove the applicability of one of the FLSA's white-collar exemptions, an employer must show that the employee meets both the salary and duties tests for the exemption that purportedly applies. *Cowart v. Ingalls Shipbldg., In*c., 213 F.3d 261, 262-63 (5th Cir. 2000). "The decision whether an employee is exempt from the FLSA's overtime compensation provisions under 29 U.S.C. § 213(a)(1), is primarily a question of fact[;] . . . [h]owever, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.,* 203 F.3d 326, 330-31 (5th Cir. 2000).

In this case, the record establishes that the executive exemption is inapplicable to Plaintiff Hines as a matter of law because Key Energy failed to introduce any evidence to support an essential element of this affirmative defense—that Hines's suggestions or recommendations were afforded particular weight. However, material fact disputes preclude the award of summary judgment on the issue of the executive exemption's applicability to Plaintiff Headrick and on the issue of the HCE's applicability to both Plaintiffs. Key Energy has abandoned its MCA exemption defense and has waived its defense under the combination and administrative exemptions.

### A. Executive Exemption

To qualify for the executive exemption an employee must: (1) be compensated on a salary basis of a rate not less than $455 per week[6]; (2) have a "primary duty" consisting of "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (3) "customarily and regularly direct the work of two or more employees"; and (4) have "the authority to hire or fire other employees" or the employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a); *see also Chambers v. Sodexo, Inc.*, 510 Fed. App'x 336, 339 (5th Cir. 2013). "The executive exemption is conjunctive and accordingly, the employer who claims the exemption must meet each element for the exemption to apply." *Mohnacky v. FTS Int'l Servs, LLC*, No. SA-13-CV-246-XR, 2014 WL 4967097, at *3 (W.D. Tex. Oct. 2, 2014) (citing 29 C.F.R. § 541.100(a)).

To be entitled to summary judgment that the executive exemption **<u>does not</u>** apply to them, Plaintiffs must demonstrate either that the record negates one of the four elements of this exemption or that there is an absence of evidence in the record to support one of these elements. There is no dispute that Key Energy can prove the first element.[7] Material issues of fact exist regarding the second and third. But there is no evidence in the record to support the existence of

---

[6] On May 23, 2016 the Department of Labor ("DOL") published a Final Rule increasing the salary basis to $913 per week, to take effect beginning on December 1, 2016. *See* 81 FR 32391. This new rule, however, was preliminarily enjoined approximately a week before its effective date. *See Nevada et al. v. U.S. Department of Labor et al.*, No. 4:16-CV-00731 (E.D. Tex. Nov. 22, 2016) [#60].

[7] Plaintiffs do not dispute that they each earned at least $455 per week while employed by Key Energy, and Key Energy submitted evidence showing that both Plaintiffs received an approximate annual salary ranging from $60,000 to $78,000. (*See* Russell Decl. ¶ 3; Davis Decl. ¶ 4.)

the fourth element as to Plaintiff Hines; thus, Plaintiffs are entitled to summary judgment that executive exemption is inapplicable to Plaintiff Hines, although a fact issue precludes summary judgment on this exemption as to Plaintiff Headrick.

1. **"Primary duty"**

A genuine issue of material fact exists regarding whether Key Energy can establish that the Plaintiffs' primary duty was the management of the enterprise, as opposed to manual labor.

The Code of Federal Regulations defines an employee's "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Factors to consider when determining an employee's "primary duty" include, but are not limited to the following: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. 29 C.F.R. § 541.700(a)." In making this assessment, courts look to the job responsibilities that are "of principal value to the employer, not the collateral tasks that [the employee] may also perform, even if they consume more than half [the employee's] time." *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1227 (5th Cir. 1990).

Key Energy claims Plaintiffs were primarily engaged in management of the enterprise, while Plaintiffs contended they were manual laborers. "Management of the enterprise" typically includes any of the following activities:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales

> records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaint and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. In contrast, "manual laborers and other blue collar workers who perform work involving repetitive operations with their hands, physical skill, and energy are not eligible for the executive exemption as a matter of law." *Goulas v. LaGreca*, No. CIV.A. 12-898, 2013 WL 2477030, at *9 (E.D. La. June 7, 2013), *aff'd sub nom.*, 557 Fed. App'x 337 (5th Cir. 2014) (quoting 29 C.F.R. § 541.3(a)) (internal quotations omitted)); *see also McPherson v. LEAM Drilling Sys., LLC*, No. 4:14-CV-02361, 2015 WL 1470554, at *11 (S.D. Tex. Mar. 30, 2015). This is because "blue collar" workers "gain the skills and knowledge required for performance of their routine manual and physical work through apprenticeships and on-the-job training, not through the prolonged course of specialized intellectual instruction required for exempt learned professional employees." *Goulas*, 2013 WL 2477030, at *9.

Notwithstanding the foregoing, an employee may qualify for the executive exemption despite his performance of manual labor where there is sufficient evidence that the employee's primary duty is managerial. *See id.* (noting that there was sufficient evidence to support a conclusion that plaintiff's "primary duty" was managerial, despite trial testimony indicating that plaintiff "spent a significant amount of his time performing 'blue collar' work on a day-to-day basis"); *see also Carranza v. Red River Oilfield Servs., LLC*, No. H-15-3631, 2017 WL 387196, at *5 (S.D. Tex. Jan. 25, 2017) (finding that plaintiff's primary duty was managing and supervising the oilfield inspection crew, and agreeing with defendant that to the extent plaintiff

9

performed any manual work similar to that of his crew members, "it would necessarily have been in connection with and [in] support of his management duties"); *Allen v. Coil Tubing Servs., LLC*, 846 F. Supp. 2d. 678, 707 n. 56 (S.D. Tex. 2012), *aff'd*, 755 F.3d 279 (5th Cir. 2014) (evidence established that plaintiff's field oversight duties as a Service Supervisor were crucial to defendant's business and thus, the fact that plaintiff performed manual labor along-side the Service Technicians he supervised in the field did not destroy plaintiff's exempt status). The determination of whether various types of oil field operators or inspectors are manual laborers so as to render them non-exempt generally "turns largely on the facts of each case." *Guyton v. Legacy Pressure Control*, No. 5:15-cv-1074-RCL, 2017 WL 244868, at *3 (W.D. Tex. Jan. 18, 2017) (collecting cases).

Plaintiffs both submitted declarations swearing that "nearly all of [their time]" working as Service Supervisors for Key Energy consisted of "physically demanding" manual labor such as loading and transporting equipment, "rigging up" equipment, overseeing the well-pumping process, operating the pumping equipment and conducting repairs where necessary, and "rigging down" the equipment upon completion of their work. (*See* Hines Decl. ¶¶ 7-8; 12-21; Headrick Decl. ¶¶ 7-8; 12-21.) Accordingly, Plaintiffs argue that as "blue collar" workers, they are ineligible for the executive exemption.

Key Energy, on the other hand, submitted declarations from Plaintiffs' former District Managers indicating that Hines's and Headrick's primary duties, respectively, related to the management of Key Energy's pressure-pumping services and coil-tubing services lines of business. (*See* Russell Decl. ¶¶ 4-7; Davis Decl. ¶¶ 4-7.) Specifically, Key Energy's District Managers attest that Hines and Headrick were expected to perform the following management-type tasks: ensuring that necessary personnel were assigned to and prepared for pressure-

pumping and/or coil-tubing projects, leading pre-shift crew meetings, meeting with customers to define the scope of work and ensure customer satisfaction, defining the scope of work for crew members based upon the customer's preferences, providing instructions and overseeing crew members, reviewing and approving daily work plans, preparing and approving daily work tickets summarizing work performed, and reviewing and approving time cards and daily bonus forms for crew members. (*See* Russell Decl. ¶¶ 4-7; Davis Decl. ¶¶ 4-7.) Plaintiffs' job descriptions support these contentions. (*See* Exs. C-9 & C-12 to Resp.)

Key Energy also disputes the amount of time Plaintiffs spent performing manual labor. While Key Energy concedes that pressure-pumping Service Supervisors such as Hines were required to perform manual labor, Hines's District Manager declares that Hines would not have spent the majority of his time performing manual labor, nor was manual labor Hines's "primary duty." (*See* Russell Decl. ¶ 7.) Key Energy further contends that coil-tubing Service Supervisors such as Headrick were not required to perform any manual labor as part of their duties. (*See* Davis Decl. ¶ 8.) "Instead, Key Energy empowered Service Supervisors to delegate duties and assignments, and it expected them to oversee and report Operators' work. If Mr. Headrick performed any manual labor, he did so at his own direction." (*Id.*)

Key Energy's evidence creates a genuine issue of material fact regarding whether Plaintiffs' primary duties consisted of management of Key Energy's enterprise rather than the performance of manual labor. *See, e.g., Guyton,* 2017 WL 244868, at * 4 (finding genuine issue of material fact existed as to whether plaintiffs were manual laborers where both parties

introduced evidence on summary judgment disputing the nature of plaintiffs' primary duties and the amount of time spent performing manual labor).[8] Thus, there is a fact issue on this element.

### 2. "Customarily and regularly directs the work of two or more employees"

A genuine issue of material fact exists regarding whether Key Energy can establish that the Plaintiffs customarily and regularly directed the work of two or more employees.

For purposes of the FLSA, the term "customarily and regularly" means "a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed "customarily and regularly" includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. § 541.70. Plaintiffs argue in their Motion that Key Energy "cannot produce evidence that Plaintiffs customarily or regularly directed the work of two or more employees." (*See* Motion at 7.) However, Key Energy, through declarations of its District Managers and Plaintiffs' job descriptions, has introduced sufficient evidence to raise a fact issue concerning whether Plaintiffs were required to customarily and regularly direct the work of a three-to-four-man crew. (*See* Russell Decl. ¶¶ 4-7; Davis Decl. ¶¶ 4-7; Exs. C-9 & C-12 to Resp.) Specifically, Key Energy's evidence indicates that Plaintiffs were regularly required to define the scope of work to be performed, delegate assignments, provide instruction and training to crew members, and oversee performance of two or more employees. (*See* Russell Decl. ¶¶ 4-7; Davis Decl. ¶¶ 4-7; Exs. C-9 & C-12 to Resp.)

---

[8] Plaintiffs argue that Key Energy fails to create a genuine issue of material fact because Key Energy relies upon declarations from managers who were not actually on-site to witness Plaintiffs' work. Such arguments, however, go to the weight of the evidence, not its admissibility. It is improper for a court to weigh evidence or make credibility determinations when considering a motion for summary judgment. *Davis v. EGL Eagle Glob. Logistics L.P.*, 243 Fed. App'x 39, 42 (5th Cir. 2007) (citing *Anderson,* 477 U.S. at 248). Further, in reviewing a motion for summary judgment "all justifiable inferences are made in favor of the nonmoving party." *Id.*

### 3. "Suggestions and recommendations . . . given particular weight"

Plaintiffs have met their burden to prove that there is an absence of evidence in the record to suggest that Key Energy gave Plaintiff Hines's suggestions and recommendations particular weight and therefore that the executive exemption is inapplicable to him as a matter of law; they have not met this burden with regard to Plaintiff Headrick.

The fourth element an employer must prove to be entitled to claim the executive exemption with regard to an employee is that the employee had "the authority to hire or fire other employees" or the employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). Key Energy does not dispute that Plaintiffs did not have the authority to hire or fire other employees. Instead, Key Energy argues that it "expected its Service Supervisors to assist the Service Manager with selecting, hiring, motivating, coaching, training, and evaluating employees." (Resp. at 11.) Key Energy further asserts that it "gave particular weight to Service Supervisors' suggestions and recommendations as to the discipline of other employees." (*Id.*)

In determining whether an employee's suggestions and recommendations are given "particular weight," the following non-exhaustive list of factors are relevant: (1) "whether it is part of the employee's job duties to make such suggestions and recommendations"; (2) "the frequency with which such suggestions and recommendations are made or requested"; and (3) "the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. A "suggestion or recommendation . . . given particular weight" is one that concern workers regularly and customarily directed by the employee, not other workers who they do not direct. *Id.* The governing regulation cautions that "occasional suggestion[s]" regarding

13

the status of a co-worker do not meet the threshold to be considered suggestions given particular weight. *Id*. An employee's recommendations can have "particular weight" even if they can be overridden by higher-level managers or if the employee does not have ultimate decision-making authority. *Id*.

Plaintiffs maintain that the evidentiary record establishes as a matter of law that Key Energy cannot prove this element because they never gave suggestions about employees who reported to them. They submitted declarations attesting that Key Energy never asked them for their input regarding the hiring, firing, performance, promotion, or discipline of other employees and that they never provided such input. (*See* Hines Decl. ¶¶ 29-32; Headrick Decl. ¶¶ 29-32.) In attempting to rebut this evidence, Hines's District Manager attests that Key Energy required Service Supervisors (including presumably Hines) to "assist the Service Supervisor with coaching and training Operators." (*See* Russell Decl. ¶ 7.) However, Key Energy failed to submit any evidence that Hines made **any** suggestions or recommendations regarding another employee's advancement or discipline in the four years he was employed as a Service Supervisor, let alone whether any such suggestions recommendations were afforded "particular weight." Further, assisting a manager with training or coaching does not prove the fourth element of the executive exemption. Plaintiffs are therefore entitled to summary judgment that the executive exemption is inapplicable to Plaintiff Hines.

Key Energy, however, has introduced sufficient evidence to generate a fact issue on the fourth element with regard to Defendant Headrick. Headrick's District Manager attests that Key Energy "expected its Service Supervisors [such as Headrick] to assist the Service Manager with selecting, hiring, motivating, coaching, training, and evaluating employees." (*See* Davis Decl. ¶ 7.) And, Headrick's job description bolsters this testimony. (*See* Ex. C-12 to Resp.) (explaining

14

that Service Supervisors are expected to "[a]ssist [the] Service Manager with selecting, hiring, motivating, coaching, training, and evaluating employee performance.") Key Energy concedes Headrick did not yet perform these responsibilities but argues that was because that it was forced to terminate Headrick just nine weeks into his role due to his theft of company property. (*See* Davis Decl. ¶ 7.) According to Key Energy, Headrick's suggestions and recommendations would have been afforded particular weight had he remained in his position longer.

Key Energy may ultimately fail to prove this element at trial with regard to Headrick. *See, e.g, Madden v. Lumber One Home Ctr., Inc*., 745 F.3d 899, 906 (8th Cir. 2014) (affirming district court's grant of plaintiffs' motion for judgment as a matter of law where owner testified that he would have involved the plaintiffs in hiring decisions if he had hired more employees because such testimony "requires the jury to impermissibly speculate and to rely on intended rather than actual job functions.") (citing 5 C.F.R. § 551.202(e)) ("While established position descriptions and titles may assist in making initial FLSA exemption determinations, the designation of an employee as FLSA exempt or nonexempt must ultimately rest on the duties actually performed by the employee.")). But summary judgment on this disputed record would be improper.

In summary, the executive exemption is inapplicable to Plaintiff Hines as a matter of law, but whether it applies to Plaintiff Headrick must be determined after a fact-finder resolves disputed issues of material fact.

### B. Highly Compensated Employee Exemption

Material issues of fact also preclude awarding Plaintiffs summary judgment on the issue of whether the HCE exemption applies to them; Plaintiffs have failed to meet their burden to demonstrate an absence of evidence to support an essential element of this exemption.

An employer can claim the HCE exemption if it proves the following three elements with regard to an employee: (1) the employee earns total annual compensation of $100,000[9] or more, which includes at least $455 per week paid on a salary basis; (2) the employee's primary duty includes performing office or non-manual work (i.e., the second element of the executive exemption); and (3) the employee customarily and regularly performs at least one of the exempt duties or responsibilities of an exempt executive, administrative or professional employee (i.e., the third element of the executive exemption). *See Zannikos v. Oil Inspections* (U.S.A.), Inc., 605 Fed. App'x 349, 359 (5th Cir. 2015) (citing 29 C.F.R. § 541.601). In the previous section, it was already established that a fact issue exists with regard to both the second[10] and third elements. So the only issue that requires resolution is whether Plaintiffs have demonstrated that Key Energy will not be able to prove as a matter of law that they did not earn at least $100,000 in total annual compensation.

The record does not conclusively establish whether Plaintiffs actually earned (or in

---

[9] In its final overtime rule, the DOL also increased the HCE salary threshold to $134,004. *See* 81 FR 32391. However, it is unsettled whether the HCE's increased salary basis has been enjoined. In preliminarily enjoining the Final Rule, the district court held that "the Department's Final Rule described at 81 Fed. Reg. 32,391 is hereby enjoined." *See Nevada et al. v. U.S. Department of Labor et al.*, No. 4:16-CV-00731 (E.D. Tex. Nov. 22, 2016) ([#60] at 19). However, the district court then specifically listed the sections of the new rule that were enjoined, and the section concerning the HCE exemption was not among that list. Regardless, Plaintiffs' employment terminated prior to the Final Rule's effective date, and both parties take the position that the HCE exemption's salary basis is $100,000. Accordingly, this Report and Recommendation does not take a position on whether the HCE exemption's salary basis has been raised.

[10] While Plaintiffs argue that the HCE exemption is inapplicable due to their performance of manual labor, Plaintiffs' mere performance of manual labor does not preclude application of the HCE exemption. *See Guyton*, 2017 WL 244868, at *3-4 (denying parties' cross-motions for summary judgment as to the applicability of the HCE exemption on the grounds that genuine disputes of material fact existed regarding the nature of plaintiffs' primary duties and the time plaintiffs spent performing manual labor).

Headrick's case, was "on track" to earn)[11] at least $100,000 in total annual compensation. However, Key Energy has produced sufficient evidence to raise a genuine issue of material fact on this issue that precludes awarding summary judgment to Plaintiffs on the HCE exemption. Key Energy submitted evidence indicating that Plaintiffs earned an "approximate" annual salary of $60,000 to $78,000. (*See* Russell Decl. ¶ 3; Davis Decl. ¶ 4.) Additionally, Plaintiffs' District Managers attest that Plaintiffs were eligible for, and received, non-discretionary bonuses in the amount of $150 per shift worked by Hines, and approximately $700 per shift worked by Headrick. (*See* Russell Decl. ¶ 3; Davis ¶ Decl. 4). And, Plaintiffs' pay records confirm that they actually received such bonuses on several occasions. (*See* Exs. C-8 & C-11). Accordingly, Plaintiffs had the potential to earn at least $100,000 in total annual compensation. While Key Energy bears the burden of proving at trial that Hines actually earned $100,000 in total annual compensation and that Headrick was "on track" to do so, Key Energy has included sufficient evidence in the record to raise a genuine issue of material fact on this issue such that summary judgment would be inappropriate.

## C. MCA exemptions

Key Energy explicitly withdrew its MCA exemption defense. (*See* Resp. at 1, n. 1.) Thus Plaintiffs' motion for summary judgment on this exemption should be granted as unopposed.

---

[11] An employee who does not work a full year (either because the employee is newly hired after the beginning of the year or ends the employment before the end of the year), may nonetheless qualify for the HCE exemption if the employee receives a pro rata portion of the $100,000 based on the period of time the employee worked. *See* 29 C.F.R. § 541.601(b)(3); *see also Allen*, 846 F. Supp. 2d at 711 (an employee who is "on track" to earn at least $100,000 if he worked a full 52-week period before his termination qualifies for the HCE exception for that work period).

### D. Administrative and combination exemptions

Plaintiffs are also entitled to summary judgment on the administrative and combination exemptions. In their Motion, Plaintiffs argued that both the administrative and the combination exemptions are inapplicable to them as matter of law for a variety of reasons including, that Plaintiffs lacked the ability to independently exercise discretion and control. (*See* Motion at 8-10.) Although Key Energy pleaded these exemptions in its answer, it has not presented any evidence to support the applicability of either exemption to Plaintiffs. In fact, Key Energy's only mention of these defenses in its Response is a single footnote:

> Key Energy maintains its affirmative defenses related to the administrative and combination exemptions under the FLSA because Hines and Headrick additionally performed a combination of administrative and executive duties. *See Guyton v. Legacy Pressure Control*, No. 5:15-CV- 1075-RCL, 2017 WL 244868, at *1 (W.D. Tex. Jan. 18, 2017) (holding that oilfield pressure control Operators were not entitled to summary judgment regarding the applicability of the HCE exemption despite performing manual tasks because they also performed a combination of executive and administrative duties).

(*See* Resp. at 13 n. 4.) That is the entirety of the briefing by Key Energy on the issue of these two exemptions; Key Energy does not identify any evidence in the record that supports its position that either exemption applies.

Accordingly, Key Energy has waived the right to assert these exemptions. *See Lopez v. River Oaks Imaging & Diagnostic Grp., Inc*., 542 F. Supp. 2d 653, 659 n. 9 (S.D. Tex. 2008) ("The Fifth Circuit consistently holds that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal. By analogy, failure to brief an argument in the district court waives that argument in that court.") (internal citations omitted)); *Bollschweiler v. El Paso Elec. Co.,* 166 F. Supp. 3d 808, 815–16 (W.D. Tex. 2016) (holding that an FLSA exemption applied to three employees where employer moved for summary judgment on that basis and employees did not contest the exemption's applicability in their response); *see*

*also* Local Rule CV-7(e) (setting forth requirements for a response and permitting the Court to grant a motion as unopposed if a compliant response is not timely filed). Plaintiffs are entitled to summary judgment that the administrative and combination exemptions do not apply to them.

## IV. Conclusion

For the reasons discussed above, the undersigned recommends that the District Court **GRANT IN PART** Plaintiffs' Motion for Summary Judgment [#17] as follows:

Plaintiffs' Motion for Partial Summary Judgment regarding the inapplicability of the executive exemption to Plaintiff Hines should be granted. Additionally, Plaintiffs' Motion for Partial Summary Judgment as to the inapplicability of the MCA, administrative, and combination exemptions as to both Plaintiffs should be granted. The remainder of the relief requested by Plaintiffs in their Motion for Partial Summary Judgment should be denied.

As the dispositive motions deadline expired on October 17, 2016, subject to any order of re-referral and consistent with the practices of the Court about the scope of referral for pretrial management, this case is **RETURNED** to the District Judge.

## V. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to

which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 26th day of May, 2017.

ELIZABETH S. ("BETSY") CHESTNEY
U.S. MAGISTRATE JUDGE